# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

CHAMBERS OF
BETH P. GESNER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-4288

April 16, 2015

Frederick A. Raab, Esquire
Mignini and Raab, LLP
606 Baltimore Avenue, Suite 100
Towson, MD 21211

Amy C. Rigney, Esquire
Social Security Administration
Altmeyer Building
6401 Security Boulevard
Room 617
Baltimore, MD 21235

Subject:    Judi Marie Boudreau v. Carolyn Colvin, Acting Commissioner, Social Security
            Civil No.: BPG-14-2055

Dear Counsel:

Pending before this court, by the parties' consent (ECF Nos. 8, 9), are Plaintiff's Motion for Summary Judgment ("plaintiff's Motion") (ECF No. 15), Defendant's Motion for Summary Judgment ("defendant's Motion") (ECF No. 16), Plaintiff's Response to Defendant's Motion for Summary Judgment (ECF No. 17), and Defendant's Surreply to Plaintiff's Response to Defendant's Motion for Summary Judgment (ECF No. 20).  The undersigned must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed.  42 U.S.C. §§ 405(g), 1383(c)(3); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (superseded by statute on other grounds).  I have reviewed the pleadings and the record in this case.  No hearing is deemed necessary.  Loc. R. 105.6.  For the reasons noted below, the court will deny plaintiff's Motion (ECF No. 15) and grant defendant's Motion (ECF No. 16).

## I.    Background

On January 4, 2010, plaintiff filed a claim for Title II disability insurance benefits and period of disability, alleging disability beginning on September 3, 2009.  (R. at 219-20; 233.) Her claim was denied initially on July 20, 2010, and on reconsideration on May 12, 2011.  (R. at 127-28; 131-37.)  After a hearing on April 17, 2013 (R. at 65-126), an Administrative Law Judge ("the ALJ") issued a decision on June 7, 2013 denying benefits based on a determination that plaintiff was not disabled. (R. at 19-35.)

The ALJ found that plaintiff had the following severe impairments: bipolar disorder, depression, rheumatoid arthritis, cervical spondylosis, and degenerative disc disease.  (R. at 21.) Despite these impairments, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment in 20 C.F.R. § 404, Subpart P, Appendix 1.  (R. at 22-23.)  The ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) except that she could not climb ladders, ropes, or scaffolds, and could only occasionally climb ramps and stairs, crawl, crouch, kneel, balance or stoop.  (R. at 24.)  The ALJ

also concluded that plaintiff was able to frequently fingering or handle objects.  (Id.)  Finally, the ALJ concluded that plaintiff is limited to simple work activity, routine and repetitive tasks in a work environment free of fast-paced production requirements, and simple work-related decisions in an environment with few if any work-place changes.  (Id.)  The Appeals Council denied plaintiff's request for review on May 13, 2014, making the ALJ's opinion the final and reviewable decision of the Commissioner.  (R. at 1-6.)

Plaintiff challenges the Commissioner's decision on the following grounds: (1) the ALJ erred in rejecting the opinions and findings of plaintiff's treating physicians as to her functional limitations; (2) the ALJ erred by improperly discounting plaintiff's credibility on the basis of her admission to an arranged, limited employment; and (3) the ALJ erred in drawing negative inferences about plaintiff's symptoms and their functional effects due to continued alcohol use without first considering any explanations that the plaintiff may provide.  (ECF No. 15.)

## II.     Discussion

First, plaintiff argues that the ALJ erred by failing to follow the treating physician rule as to the opinions of Dr. Eleanor Hutchens and Dr. F. Taghizadeh.  (ECF No. 15-1 at 19-35.)  Defendant maintains that the ALJ properly considered the opinions of plaintiff's treating physicians and clearly articulated his analysis of the record.  (ECF No. 16-1 at 15-20.)  Under the treating physician rule, the ALJ must generally give more weight to a treating physician's opinion.  See 20 C.F.R. § 404.1527(c)(2).  Where a treating physician's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence, however, it should be afforded significantly less weight.  Craig, 76 F.3d at 590.  Moreover, the ALJ is never required to give controlling weight to a treating physician's opinion on the ultimate issue of disability.  20 C.F.R. § 404.1527(d)(1).  If a treating source's opinion is not given controlling weight, the ALJ must consider the following factors in deciding what weight to give the opinion: length and frequency of treatment relationship, nature and extent of treatment relationship, supportability, consistency, specialization, and any other factors which tend to support or contradict the opinion.  20 C.F.R. §§ 404.1527(c)(1-6).  An ALJ need not apply these factors in a mechanical fashion, as long as the ALJ articulates the reasoning behind the weight accorded to the opinion.  Carter v. Astrue, No. CBD-10-1882, 2011 WL 3273060, at *6 (D. Md. July 27, 2011).

Plaintiff's argument that the ALJ failed to follow the treating physician rule is without merit because the ALJ properly analyzed the weight that should be given to the opinions of Dr. Hutchens and Dr. Taghizadeh.  Dr. Hutchens opined that plaintiff was only capable of lifting five (5) pounds, and agreed with plaintiff's pursuit of disability benefits.  (R. at 669, 674.)  As the ALJ correctly concluded, however, Dr. Hutchens' opinion is inconsistent not only with her own treatment notes, but with the remainder of plaintiff's medical record.  (R. at 32.)  For example, plaintiff indicated to Dr. Hutchens that her arthritis pain was "debilitating," yet admitted that she took no medication to cope with the pain.  (R. at 654.)  Plaintiff also testified that she manages her pain with 800mg of ibuprofen, which "takes the majority of [the pain] away."  (R. at 92,

660.)  Further, plaintiff's physical examinations show mild, as opposed to significant abnormalities, and plaintiff has sought only sporadic, conservative treatment for her arthritis since March 2011.  (R. at 575-76, 630, 654.)  Indeed, Dr. Hutchens noted that plaintiff only sought increased treatment for her arthritis after she ran out of income and unemployment benefits.  (R. at 660.)  In addition, plaintiff testified that she has worked as a sales associate in a furniture store since June 2012.  (R. at 97-98.)  Although plaintiff is not required to perform any lifting at work, she shows customers around a showroom for seven and a half (7.5) hours per day, two and half (2.5) days per week.  (R. at 98-99.)  Plaintiff also testified that she obtained this position in order to pay for her phone bill, car insurance, and gas.  (R. at 100.)  Therefore, the ALJ did not err by assigning minimal weight to Dr. Hutchens' opinions, because those opinions were inconsistent with Dr. Hutchens' treatment notes and the other evidence of the record.

Dr. Taghizadeh concluded that plaintiff has "poor to none" ability to make occupational adjustments, has extreme difficulty concentrating and interacting with others, has a low energy level, easily becomes irritable and frustrated, and could only work for one (1) hour at a time. (R. at 623-35.)  The ALJ properly concluded, however, that Dr. Taghizadeh's opinion is extreme, as well as unsupported by plaintiff's activities and the totality of the medical evidence.  (R. at 33.)  With respect to plaintiff's work activities, plaintiff works as a sales associate at a furniture store for seven and a half (7.5) hours per day, at least twice per week.  (R. at 97-99.)  Plaintiff obtained this position by calling an old friend and asking for a job.  (R. at 97-98.)  Plaintiff's job requires that she interact with the public by greeting customers, directing customers around the showroom, and speaking with customers about products for sale.  (R. at 99.)  Plaintiff has denied difficulty getting along with her coworkers and supervisors.  (R. at 105, 107-08.)  In terms of plaintiff's daily activities, plaintiff previously indicated that she watches television, prepares simple meals, shops for groceries, drives a car, and pays her bills.  (R. at 81, 100, 471, 475, 518.)  Plaintiff maintains relationships with her friends and family, who often help and check in on her. (R. at 75, 475, 519.)  In sum, the evidence in the record supports the ALJ's rejection of Dr. Taghizadeh's opinion, as that opinion is inconsistent with plaintiff's reported work and daily activities.

Plaintiff's second argument is that the ALJ erred in failing to properly evaluate plaintiff's credibility.  (ECF No. 15-1 at 35-44.)  Defendant responds that the ALJ performed a proper credibility analysis.  (ECF No. 16-1 at 20-25.)  The Fourth Circuit has developed a two-part test for evaluating a claimant's subjective complaints.  Craig, 76 F.3d at 594.  First, there must be objective medical evidence of an impairment that is reasonably likely to cause the symptoms alleged by the claimant.  Id.  If the claimant meets this threshold requirement, the second step requires that the ALJ evaluate "the intensity and persistence of the claimant's [subjective complaint], and the extent to which it affects [the claimant's] ability to work."  Id. at 595. Factors to be considered at step two of the credibility analysis include the claimant's "history, the signs and laboratory findings, and statements from [the claimant], [the claimant's] treating or nontreating source, or other persons about how [the claimant's] symptoms affect [him/her, and]

medical opinions of [the claimant's] treating source and other medical opinions." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). The ALJ should generally consider (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain or other symptoms; (3) precipitating or aggravating factors; (4) the type, dosage, effectiveness, and side effects of medication; (5) treatments or other measures taken for relief; and (6) other factors concerning functional limitations and restrictions. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The ALJ must refer specifically to evidence informing his conclusion, including the reasons for rejecting evidence that contradicts his or her findings. See, e.g., Gordon v. Schweiker, 725 F.2d 231, 236 (4th Cir. 1984) (ordering remand because the ALJ failed to adequately explain the basis of his findings). "Because [the ALJ] had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).

The ALJ properly performed a credibility analysis as to plaintiff. First, the ALJ concluded that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." (R. at 27.) In the second step of the analysis, however, the ALJ concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of [those] symptoms are not entirely credible." (Id.) Specifically, the ALJ determined that plaintiff was only "partially credible" because her reported activities are contrary to the alleged disabling nature of her symptoms. (R. at 27-28.) The ALJ highlighted plaintiff's own reports of her ability to work part-time as a sales associate, prepare simple meals, drive her car, shop in stores, and pay her bills. (Id.) While plaintiff noted extreme pain in her wrists and back due to her arthritis, she also reported that Ibuprofen alleviates the majority of her pain, and "admitted that she was able to deal" with her condition "during her past relevant work." (R. at 26, 28.) Additionally, the ALJ noted that plaintiff has sought and received only mild, inconsistent conservative treatment for her arthritis. (R. at 28, 30-31.) Lastly, the ALJ considered plaintiff's alleged social limitations, but concluded that they were inconsistent with plaintiff's ability to maintain a part-time job as a salesperson. (R. at 33.) The ALJ had sufficient evidence to conclude that plaintiff's allegations about the severity of her symptoms were unsupported by the evidence in the record.

Plaintiff's final argument is that the ALJ erred by drawing negative inferences about plaintiff's symptoms and their functional effects due to continued alcohol use without considering any explanations provided by plaintiff. (ECF No. 15-1 at 44-48.) Defendant argues, however, that the ALJ did consider plaintiff's explanations. (ECF No. 16-1 at 23-25.) To receive benefits, a claimant "must follow treatment prescribed by [his/her] physician" if such treatment will enable the claimant to work. 20 C.F.R. § 404.1530(a). Benefits will be denied if the claimant fails to follow the prescribed treatment without good reason. 20 C.F.R. § 404.1530(b). Pursuant to SSR 96-7p, however, the ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or

Boudreau v. Colvin
BPG-14-2055
April 16, 2015
Page 5

failure to seek medical treatment."  1996 WL 374186, at *7 (July 2, 1996).

      Plaintiff's argument is without merit because the ALJ considered plaintiff's explanation that she self-medicated with alcohol after her daughter was raped and while her parents suffered from serious health issues.  (R. at 27.)  The ALJ also considered the connection between plaintiff's alcohol use and mental health issues, but noted that plaintiff has been advised to refrain from using her mental illness as an excuse for her continued use of alcohol.  (R. at 29-30, 394.)  Additionally, the ALJ cited to multiple notations in plaintiff's medical record which indicate that plaintiff's mental state improves when she abstains from alcohol.  (R. at 28-30.)  Plaintiff is also able to "maintain" and hold a job when she receives treatment on a regular basis.  (R. at 29, 393.)  The ALJ noted, however, that plaintiff has not consistently complied with her treatment protocols, and did not become sober until January 18, 2013.  (R. at 28-30, 97.)  Thus, the ALJ appropriately considered plaintiff's explanations prior to drawing inferences about her symptoms and their effects due to her continued alcohol use.

## Conclusion

      For the reasons stated above, plaintiff's Motion (ECF No. 15) is DENIED and defendant's Motion (ECF No. 16) is GRANTED.

      Despite the informal nature of this letter, it will constitute an Order of the court and will be docketed accordingly.

Very truly yours,

/s/

Beth P. Gesner
United States Magistrate Judge